KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JULIO LUCAS-GARCIA,<br><br>Defendant. | Criminal Case No. 08CR1625-BEN<br><br>Date: August 11, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 3<br><br>The Honorable Roger T. Benitez<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS FOR DISCOVERY**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motion for Discovery. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

/ /

/ /

/ /

/ /

## I

## STATEMENT OF THE CASE

On May 21, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Julio Lucas-Garcia ("Defendant") with deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). On June 2, 2008, Defendant was arraigned on the Indictment and pled not guilty. On June 6, 2008, Defendant filed a motion for discovery. The United States files the following response in opposition to Defendant's motion.

## II

## STATEMENT OF FACTS

### A. OFFENSE CONDUCT

#### 1. Apprehension by San Diego Sheriff Department

On May 8, 2007, at approximately 8:25 p.m., San Diego Sheriff M. Paquette responded to a radio call concerning a suspected drunk driver traveling southbound on Pomerado Road in Poway, California. Sheriff Paquette followed a Honda Accord that was drastically swerving within it owns lane. Sheriff Paquette performed a traffic stop of the Honda Accord and approached the driver, later identified as "Alfredo" Garcia (true name: Julio Lucas-Garcia, Defendant). Defendant was arrested and charged with several vehicle code violations, including Driving under the Influence of Alcohol, in violation of California Vehicle Code § 23152(A). Defendant was convicted of DUI and sentenced to state custody.

#### 2. Immigration Detainer by ICE

On December 19, 2007, while Defendant was in custody at Richard J. Donovan Correctional Facility, an Immigration Enforcement Agent ("ICE") determined that Defendant was a citizen and national of Mexico and placed a detainer pending Defendant's release from state custody.

#### 3. Defendant Referred to ICE Custody

On March 12, 2008, at approximately 9:45 a.m., Defendant was released from state custody and referred to ICE custody for removal proceedings. An ICE Deportation Officer reviewed various immigration databases and conducted a records check confirming that Defendant was a citizen and national of Mexico having previously been deported from the United States.

### B. DEFENDANT'S IMMIGRATION HISTORY

A records check confirmed that Defendant is a citizen and national of Mexico, and that Defendant was ordered excluded, deported, and removed from the United States to Mexico pursuant to an order issued by an immigration judge on August 9, 2005 and May 5, 2005. After Defendant's last deportation, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

### C. DEFENDANT'S CRIMINAL HISTORY

Defendant has an extensive criminal history. The United States, propounds that Defendant has at least eight criminal history points placing him in Criminal History Category IV.

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 12/1/2004 | Superior Court of California Vista | Cal. PC § 245(a)(1) – Assault with a Deadly Weapon Likely to Cause Great Bodily Injury (Felony)<br><br>7/18/2007: Probation revoked | 365 days, 3 yrs probation<br><br>2 years prison |
| 7/18/2007 | Superior Court of California Vista | Cal. VC § 23152(A) – Driving under the Influence of Alcohol (Misdemeanor) | 180 days jail |

## III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE COURT SHOULD DENY DEFENDANT'S MOTION FOR DISCOVERY

As of the date of this Motion, the United States has produced 109 pages of discovery (including reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's prior convictions, immigration history, and other documents from Defendant's Alien File ("A-File")), 1 DVD-ROM containing Defendant's videotaped, post-arrest statement, and tapes of Defendant's deportation hearing. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no**

reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

**1. Defendant's Statements**

The United States will comply with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The United States has produced all of Defendant's statements that are known to the undersigned as of the date of this response. If the United States discovers additional oral or written statements that require disclosure under Fed. R. Crim. P. 16(a)(1)(A) or (B), such statements will be provided to Defendant.

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**2. *Brady* Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

/ /

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Brady does not, however, require that the United States open its file for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 128-29 (9th Cir. 1995)); (3) evidence that the defendant already possess (see United States v. Mikaelian, 168 F.3d 380, 389-90) (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the United States Attorney could not reasonably be imputed to have knowledge or control over (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).

**3. Defendant's Prior Record and 404(b)/609 Evidence**

The United States has already provided Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16 (a)(1)(D). Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See Fed. R. Evid. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

/ /

     **4. Evidence Seized**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E).

**5. Arrest Reports, Notes and Memos**

The United States incorporates by reference Responses 1 and 2. The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by federal agents. If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra regarding Jencks Act; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**6. Tangible Objects**

As previously discussed in response 8 above, the United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant. However, the United States need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**7. Bias of Government Witnesses**

The United States incorporates by reference Response 2 above. The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States'

trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**8. Prior Record/Other Acts of Government Witnesses**

The United States incorporates by reference Response 2 above.

**9. Investigation of Witnesses**

The United States incorporates by reference Response 2 above. The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

/ /

**10.     Evidence Affecting Perception, Recollection, Ability to Testify**

The United States incorporates by reference Response 2 above.

**11.     Personnel Files - *Henthorn* Materials**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

**12.     Government Witnesses**

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call.  Therefore, the United States will not comply with this request.

The United States has provided and will continue to provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir. 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)). Nevertheless, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992).

/ /

The United States also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a government witness. "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Yung, 97 F. Supp.2d 24, 36 (D.D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

**13. Other Witnesses**

The United States incorporates by reference Response 12 above.

**14. Favorable Testimony**

The United States incorporates by reference Responses 2 and 12 above.

**15. Specific Inquiries of Agents**

The United States incorporates by reference Responses 1, 2, 5 and 6 above.

**16. Rule 26.2 Material / Timing of Production**

The United States has and will continue to comply with Fed. R. Crim. P. 26.2.

**17. Expert Witnesses**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

**18. Expert's Reports and Summaries**

The United States incorporates by reference Response 17 above. The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**19. Confidential Informants**

Defendant incorrectly asserts that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Roviaro v. United States, 353 U.S. 52, 60-61 (1957). Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses.

As previously stated in Response 15 above, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

**20. Agreements with Government Witnesses - *Giglio* Material**

The United States incorporates by reference Responses 2 and 19 above. The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**21. Minutes of Grand Jury Proceedings**

The United States objects to Defendant's request for minutes of grand jury proceedings because Defendant fails to support his motion with anything even remotely approximating the requisite need to

invade the sanctity of the grand jury's deliberations. As such, the Court should deny this request.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Defendant has not suggested any ground on which proceedings before the grand jury would warrant dismissal of the indictment. It is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. See United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. See United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Id. at 409.

There is no basis upon which to dismiss the indictment. Indeed, Defendant does not and cannot identify a single thing that might have occurred before the grand jury which could possibly warrant dismissal. Thus, the Court should deny Defendant's request.

**22. Grand Jury Transcripts**

The United States incorporates by reference Response 21 above.

**23. Statements by Government or Refusal to Provide**

The United States objects to Defendant's request as vague and overbroad, and not required by any rule of Criminal Procedure or by prior precedent. The United States has and will continue to comply with its discovery obligations.

**24. Jencks Act Material**

While Defendant does not reference the Jencks Act in his motion, the United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**25. Alien File ("A-File")**

The United States objects to any request by Defendant to inspect the A-File. This information is equally available to Defendant through a Freedom of Information Act request. Even if Defendant

could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The United States will produce documents from Defendant's A-File it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File are material. Finally, Defendant does not own the A-File. It is an agency record. Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

## IV

## CONCLUSION

For the foregoing reasons, the United States requests the Court deny Defendant's Motion for Discovery.

DATED: August 6, 2008.

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    /s/ *Joseph J.M. Orabona*
    JOSEPH J.M. ORABONA
    Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, Plaintiff,

v.

JULIO LUCAS-GARCIA, Defendant.

Criminal Case No. 08CR1625-BEN

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **The United States' Response in Opposition to Defendant's Motion for Discovery** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Charles Halligan Adair
Law Offices of Charles H. Adair
1140 Union Street, Suite 201
San Diego, California 92101
Tel: (619) 233-3161
Fax: (619) 233-3127
Email: adair.c@sbcglobal.net
*Lead Attorneys for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney